JS 44 - No. CALIF. (Rev. 4/97)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO)

ECF

## I.(a) PLAINTIFFS

Phillip Gipson

## DEFENDANTS

Robert Horel, warden, and People of the State of California

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

Contra Costa

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Robert J. Beles / Paul McCarthy
1 Kaiser Plaza 2300
Oakland CA 94612-3642  tel. 510 836 0100

ATTORNEYS (IF KNOWN)
Office of the Attorney General
455 Golden Gate Avenue suite 11000
San Francisco, California 94102

## II. BASIS OF JURISDICTION (PLACE AN "✗" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "✗" IN ONE BOX FOR PLAINTIFF

(For diversity cases only)                    AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "✗" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "✗" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Med Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault Libel & Slander | ☐ 365 Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 460 Deportation ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service ☐ 850 Securities/Commodities/ |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending ☐ 380 Other Personal | ☐ 690 Other | **LABOR** | **SOCIAL SECURITY** | Exchange ☐ 875 Customer Challenge |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl.Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | | ☐ 870 Taxes (US Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS - Third Party | Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☒ 530 General | | 26 USC 7609 | ☐ 950 Constitutionality of State |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 USC 2254 habeas corpus -- jury selection (Batson) / biased juror

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

☐ CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY   PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE A "✗" IN ONE BOX ONLY)   ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE May 19 2008   SIGNATURE OF ATTORNEY OF RECORD  Paul M Tandy

E-filing

1

**Robert J. Beles** Bar No. 41993
**Paul McCarthy** Bar No. 139497

2   One Kaiser Plaza, Suite 2300
Oakland, California 94612-3642

3   Tel No. (510) 836-0100
Fax. No. (510) 832-3690

4

Attorney for *Petitioner PHILLIP GIPSON*

5

FILED

MAY 1 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

6

7

8

9                  United States District Court
Northern District of California

10

| | |
|---|---|
| PHILLIP GIPSON, | No. **C08-02526** |
| *Petitioner,* | PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES |
| vs. | |
| ROBERT HOREL, Warden, Pelican Bay State Prison, California, | |
| *Respondent.* | |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| *Real Party in Interest.* | |

18              **PETITION FOR WRIT OF HABEAS CORPUS**

19           **MEMORANDUM OF POINTS AND AUTHORITIES**

20

21

22

23

24

25

26

27

28

1

1

# TABLE OF CONTENTS

2

item                                                                                                      page number

3   TABLE OF AUTHORITIES ............................................................. iii

4       1. Statement of Custody .......................................................... p-1

5       2. Statement of the Case ......................................................... p-1

6           a.  State Court Proceedings and Timeliness of Petition ................. p-1

7           b. Statement of Facts ........................................................ p-2

8               i. Jury selection ......................................................... p-2

9               ii. Biased juror .......................................................... p-5

10      3.  Claims for Relief ............................................................. p-6

11      4.  Prejudice .................................................................... p-7

12  VERIFICATION ................................................................... p-7

13  MEMORANDUM OF POINTS AND AUTHORITIES ........................ m-1

14  1. By excusing prospective jurors Ms. Youngblood, Ms. Jackson, and Ms.
        Watkins, the prosecutor improperly used his peremptories to exclude a cognizable
15      group of African American women. ................................................. m-1

16          a. Introduction ............................................................. m-1

17          b.     The prosecutor did not offer permissible race neutral
                   justifications for striking prospective jurors Ms. Youngblood and
18          Ms. Jackson. ............................................................ m-2

19              i. Ms. Youngblood ...................................................... m-2

20                  (1)  Lack of "eye contact." .......................................... m-2

21                  (2) Occupation .................................................... m-4

22              ii. Ms. Jackson ......................................................... m-6

23                  (1)  Dismissal of prior case ........................................ m-6

24                  (2)  Auto accident involving police officer .............. m-6

25              iii.  The trial court did not find that the prosecutor sincerely
                      believed the justifications. ............................... m-8

26
            c. This court must issue a writ if *any* juror was excluded as the
27          result of discrimination, without considering "prejudice" ........... m-10

28

i

*item*                                                                                    *page number*

2. The trial court failed to remove a biased juror, denying petitioner his Sixth
Amendment right to an impartial jury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  m-10

    a. The juror admitted that the personal relationship between his wife and
    the prosecutor's wife might affect his decision in the case. . . . . . . . . . . .  m-10

3. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  m-12

Petition for Writ of Habeas Corpus; Memorandum of Points and Authorities

1

## TABLE OF AUTHORITIES

2

*cases*                                                                          *page number*

3    *Batson v. Kentucky* (1986) 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69. ...... m-2, m-7

4    *Campbell v. Louisiana* (1998) 523 U.S. 392, 118 S. Ct. 1419, 140 L. Ed. 2d 551 ..... m-2

5    *Collins v. Rice*, 365 F.3d 667 (9th Cir. 2004) ................................. m-7

6    *Fields v. Woodford*, 309 F.3d 1095 (9th Cir. 2001) ........................... m-10-12

7    *Hernandez v. New York*, 500 U.S. 352, 369, 111 S. Ct. 1859,
     114 L. Ed. 2d 395 (1991) ................................... m-1, m-3, m-4, m-8

8

9    *Johnson v. Vasquez*, 3 F.3d 1327 (9th Cir. 1993) ............................ m-7

     *Kesser v. Cambra*, 465 F.3d 351 (9th Cir. 2006) .............................. m-8
10
     *McClain v. Prunty*, 217 F.3d 1209 (9th Cir. 2000) ........................... m-7
11
     *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548,
12   78 L. Ed. 2d 663, 104 S. Ct. 845 (1984) ............................ m-10, m-11

13   *Miller-El v. Dretke*, 545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005) ... m-1, m-6,
                                                                                       m-8
14   *People v. Guerra* (2006) 37 Cal.4th 1067 ................................... m-8

15   *People v. Wheeler* (1978) 22 Cal.3d 258 ................................ p-3, m-1

16   *Powers v. Ohio* (1991) 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 ........... m-2

17   *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) ........... m-10

18   *Snyder v. Louisiana,* — U.S. —, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008) .... m-1-5, m-8

19   *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089,
     67 L. Ed. 2d 207 (1981) ................................... m-5, m-6
20
     *Tinsley v. Borg*, 895 F.2d 520 (9th Cir. 1990 ........................... m-10, m-11
21
     *United States v. Annigoni* (1995) 68 F.3d 279(9th Cir. 1995.) ................... m-10
22
     *United States v. Gonzalez*, 214 F.3d 1109 (9th Cir. 2000) ................. m-10, m-11
23
     *United States v. Torres*, 128 F.3d 38 (2nd Cir. 1997) ......................... m-11
24
     *United States v. Vasquez-Lopez*, 22 F.3d 900 (9th Cir. 1994.) .................... m-2
25
     *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841, 105 S. Ct. 844 (1985) ........ m-11
26

27

28

iii

*statutes*                                                              *page number*

Penal Code section 187 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1, m-7

Penal Code section 1118    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-3, m-6

Penal Code section 12022.53(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

Penal Code section 12022.53(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

Penal Code section 12022.53(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

Penal Code sections 12022.5(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . p-1

United States Constitution, Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . m-10, m-11

United States Constitution, Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . m-10

Petition for Writ of Habeas Corpus;  Memorandum of Points and Authorities

United States District Court
Northern District of California

| | |
|---|---|
| PHILLIP GIPSON, | No. |
| *Petitioner*, | PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| ROBERT HOREL, Warden, Pelican Bay State Prison, California, | |
| *Respondent*. | |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| *Real Party in Interest*. | |

## PETITION FOR WRIT OF HABEAS CORPUS

Comes now petitioner and petitions this court for a writ of habeas corpus.

### 1. Statement of Custody

1. Petitioner is in the custody of Robert Horel, Warden, serving a sentence of 40 years to life following a conviction of second degree murder, Penal Code section 187, plus various firearms enhancements.

2. Robert Horel is the Warden of Pelican Bay State Prison. The People of the State of California is the respondent.

### 2. Statement of the Case

#### a. State Court Proceedings and Timeliness of Petition

3. On September 1, 2004, following a jury trial, appellant was convicted of second degree murder, Penal Code section 187, plus various firearms enhancements under Penal Code sections 12022.5(a)(1), 12022.53(b), 12022.53(c), and 12022.53(d). (CT 123.) Appellant was sentenced on December 17, 2004 to consecutive terms of 15 years to life in state prison for the second degree murder and 25 years afor the 12022.53(d) enhancement. (CT 779-790.) This appeal followed.

4. Petitioner filed a timely notice of appeal to the California Court of Appeal for the First District on January 10, 2005. On December 29, 2006, the Court of Appeal affirmed petitioner's

conviction. Petitioner then filed a timely petition for review to the California Supreme Court on February 5, 2007. On April 2, 2007, the California Supreme Court denied the petition for review. This petition is filed within 1 year plus 90 days of the denial of direct review by the California Supreme Court and is thereby timely. *Summers v. Schriro*, 481 F.3d 710 (9th Cir. 2007), *Brambles v. Duncan*, 412 F.3d 1066, 1069 (9th Cir. 2005.)

### b. Statement of Facts

### i. Jury selection

5. Petitioner is an African-American. The defense challenged the prosecution's use of peremptory challenges to remove two African American women, Furaha Youngblood and Phaedra Jackson.

6. Furaha Youngblood said that she was an English teacher at Richmond Public School (RT. 49) who had taught in public schools for six years before that. (RT. 50.) She had also worked a journalist from 1972-1977 at KDIA radio in Oakland, covering community stories (RT. 50.) She had also resided for ten years in the Ivory Coast, an African country. (RT. 49.) Her brother had worked as a probation officer. (RT. 50.))

7. When the prosecutor excused Ms. Youngblood, defense made a Wheeler motion, stating that the prosecutor had excused Ms. Youngblood because she was an African American woman. (RT. 87.) The prosecutor retorted that the defense had excused five straight white men. The court remarked that the prosecution complaint appeared premature "given the composition of the panel", implying that there have been a lot of white males on the panel. (RT. 88.)

8. Phaedra Jackson (RT. 94) said that she had been a juror on a murder case in 1994. The case had been dismissed when the jury went in to deliberate. (RT. 95.) She didn't remember any details about the murder case. (RT. 98.) She did not believe anything about that case would affect her ability to be objective. (RT. 95.) Ms. Jackson expressed concern that the system is unfair to victims of violent crimes. (RT. 95.)

9. Ms. Jackson had been involved in a car accident with a policeman in a patrol car. The officer said he was on his way to a chase. (RT. 96.) She did not believe the officer and thought the accident was his fault. She did not seek damages because she thought it would be too

1  expensive. She said that the experience would not affect her because it was just one policeman

2  that she had the problem with. She has had "rather pleasant experiences" with other policemen.

3  (RT. 97.)

4      10.  At the close of jury selection, the defense challenged the exclusion of both Ms.

5  Youngblood and Ms. Jackson, claiming that the prosecutor was systematically trying to exclude

6  African American women over 40 years of age, citing *People v. Wheeler* (1978) 22 Cal.3d 258,

7  and *Batson v. Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). The court noted

8  that Juror no. 3 was also an African American woman and had been left on the jury from the

9  beginning. (RT. 169.)

10     11. The court found that (a) the group of African American females above the age of 40

11  was a cognizable group, but (b) the defense had not made a prima facie showing of an

12  intentional exercise of peremptory challenges to exclude this group "by a preponderance of the

13  evidence." (RT. 170.) However, the court asked the prosecutor to state the basis of his exercise

14  of his challenges. (RT. 171.) The prosecutor's stated reasons for removing the two jurors as

15  follows:

16     12.  **Ms. Jackson:** She sat on a murder case that was dismissed before deliberations, and

17  he thought the juror would be skeptical. The prosecutor speculated that the case had been

18  dismissed under Penal Code section 1118, "something wrong with the evidence". But he had no

19  information on why the case was dismissed and had not questioned Ms. Jackson about the

20  dismissal. The prosecutor also was concerned about the auto accident Ms. Jackson had been

21  involved in, saying that Ms. Jackson "apparently thought the officer lied.' (RT. 171-172.)

22     13.  **Ms. Youngblood.:** She was a teacher and journalist, "liberal" professions, and she

23  had made no "eye contact" with the court during the court's initial comments to the jury. (RT.

24  172.)

25     14.    The court denied the motion, stating that the prosecutor had stated non-

26  discriminatory grounds for exercising his peremptory challenges. (RT. 173.)

27     15.   Following the *Batson-Wheeler* motion, jury selection continued. One of the

28  prospective jurors was Katrice Watkins, a part African-American woman, who was examined

1    outside of the presence of the other jurors.

2    16. Ms. Watkins said that her son's father lives in the area and the defendant looks
3    familiar to her. (RT. 201.)

4    17. She had had a gun charge arrest that was dismissed. It wasn't her gun, but it was in
5    her car. (RT. 202.) She was arrested for welfare fraud, didn't report working, paid the money
6    back and they dismissed it. (RT. 202.) Ms. Watkins' brother was jailed for six months on a rape
7    charge before they found out he was innocent. The same brother also got beaten up by the
8    police. (RT. 203.) Recently, Ms. Watkins had gotten a ticket. She stopped in a bus zone because
9    her daughter had to "pee real bad and couldn't hold it." As the embarrassed daughter urinated
10   on the ground, the officer first told her he would only check her registration and then gave her
11   a ticket. (RT. 204.) She felt that the officer had not been forthright about saying that he would
12   only check her registration. In addition, Ms. Watkins mentioned that someone had once broken
13   into her house and shot her brother, (RT. 205) and that 18 years before, she had been shot from
14   someone driving by in a car while she was walking down the street, the bullet grazing her hand.
15   (RT. 206.)

16   18. Ms. Watkins insisted that she was not prejudiced against the police. Some officers
17   are not good officers, but others have helped her. (RT. 263.) Her aunt is a retired probation
18   officer. (RT. 204.)

19   19. None of those incidents would make her unfair to either side. Ms. Watkins' main
20   concern was that she works for Federal Express. (RT. 208.) She lives in the Fruitvale area and
21   a lot of people know her face. (RT. 208.) Ms. Watkins had also just gotten back to work after
22   three years of being unemployed. She is a single parent. She was told that if the work didn't get
23   done because of her jury duty, they would send it to someone else and we wouldn't have a job.
24   (RT. 209.)

25   20. The prosecutor excused Ms. Watkins. Defense counsel amended his *Wheeler - Batson*
26   motion to include Watkins who appeared to be part African-American and amended the
27   cognizable class to African-American women, unspecified as to age. (RT. 212-213.)

28   21. The court ruled that the defense had not shown a prima facie case of discrimination

in Ms. Watkins' case since she had "a tremendous amount of baggage." She had left out information on her questionnaire. She and her brother were shot, and she hadn't disclosed that except with follow up questions. (RT. 213.) Watkins is also 32-33 years old, and didn't fit into defense counsel's excluded group of African American women over 40. (RT. 214.) However, the court did remark:

> "I suppose there is a – what I am saying is, there is a – some evidence by preponderance of the evidence that there may be a pattern and so you need to explain the basis for your challenges, especially in conjunction with all three of them. I would also encourage you to expand the basis for your challenge, specifically, with regard to Ms. Watkins, despite my comments..."

(RT. 214.)

22. The prosecutor did not further explain his challenges for all three of the female African American women he had excused. He simply said that he had excluded Ms. Watkins because of her personal contact with police – a firearm arrest, a welfare fraud case, and her fighting a ticket where she says the police officer misrepresented himself. She was also shot in the hand in a drive-by shooting, and her brother was shot in a home invasion robbery and spent six months in jail for a rape that he didn't commit. (RT. 214-215.) The court found that the prosecutor's reasons for excluding all three prospective jurors were race neutral. (RT. 215.)

### ii. Biased juror

23. During deliberations, the judge received a letter from Juror #9 saying that he had just learned that his wife had a social connection with the wife of the prosecutor, Mr. Dolge. (RT. 1778.) The letter stated that Juror #9 had been "scrupulous" about maintaining the terms of the court's admonition:

> "last night, my wife blurted out that she thought she knew Mr. Dolge's wife through a mother's parenting group that they are both in, and that they 'are our neighbors.' She said that 'Earlier in the day while the group was meeting that they had been talking and realized that I was probably a juror on the case, that the other woman's husband had just finished presenting evidence. Last night my wife looked up the membership list of her mothering group on her computer and asked me is his name Greg Dolge and began to describe her friendship with his wife.
>
> I told my wife that we should not be discussing any aspect of the case, including her friendship with the DA's wife."

(RT. 1779.) Juror #9 said that he had never met Mr. Dolge or his wife and his wife had not met

1    Mr. Dolge.

2    24. The judge brought Juror #9 down for questioning. Juror #9 said her didn't think

3    that anything mentioned in his letter would prevent him from being fair and impartial, but

4    offered to recuse himself .(RT. 1781.) Asked if anything about the friendship between the wives

5    would cause him to view appellant differently, Juror #9 responded, "no, not how I view Mr.

6    Gipson." (RT. 1782.) Asked if his decision would be affected by a desire to foster the

7    relationship between his wife and Mr. Dolge's wife, Juror #9 replied:

8    > "I don't think that my decision would be affected, but just in playing through the
   > logic of the situation that the perception that that would be true crossed my mind,
9    > and I don't know if that's the same thing as it actually being a thought within my
   > mind."

10   (RT. 1783.) Juror #9 said that there had been no exchange of information or details of the case

11   between Dolge's wife and his wife as far as he knew, and he had not given his wife any details

12   of the case, but finally admitted:

13   > "I'm not sure that I can completely discount the possibility that an increase of
14   > sympathy for the district attorney might be added to just my overall feelings. I
   > don't think it would affect how I've already considered the case. But I – you
15   > know, I can't completely discount that."

16   By "sympathy", Juror #9 meant the knowledge that Dolge is the father of a small child "and in

17   some way we're in a social circle together." (RT. 1784.)

18   25. Defense counsel asked the court to remove Juror #9 because he had expressed

19   sympathy for the prosecutor due to the out of court contact between the wives. The court denied

20   the motion, saying that in small communities, chance meetings and the issue of sympathy could

21   arise, it was harmful to the deliberation process to replace jurors, and Juror #9 was fully capable

22   of being fair and impartial.(RT. 1788.)

23   ### 3.  Claims for Relief

24   26. By excusing prospective jurors Ms. Youngblood, Ms. Jackson, and Ms. Watkins, the

25   prosecutor improperly used his peremptories to impermissibly exclude a cognizable group of

26   African American women, in violation of the African-American petitioner's right to equal

27   protection of the laws under the Fourteenth Amendment to the United States Constitution.

28   26. In retaining a biased juror on the jury, the court deprived petitioner of his Sixth

1    Amendment right to an impartial jury.

2    **4. Prejudice**

3      27. The errors were structural and do not require petitioner to show any prejudice in

4    order to obtain relief.

5      Wherefore, petitioner prays that this court issue a writ of habeas corpus and order such

6    other and further relief as this court may find proper.

7      Dated: Oakland, California, Friday, May 16, 2008.

Robert J. Beles
Paul McCarthy
Attorneys for *Petitioner* PHILLIP GIPSON

**VERIFICATION**

Petitioner is presently in custody outside of this county. I therefore verify this petition on his behalf. I declare under penalty of perjury that the facts stated in this petition are true and correct based on Friday, May 16, 2008.

Paul McCarthy
Attorney for *Petitioner* PHILLIP GIPSON

1

2

United Staes District Court
Northern District of California

3    PHILLIP GIPSON,                        No.

4              *Petitioner*,                MEMORANDUM OF POINTS AND
                    vs.                     AUTHORITIES

5

6    ROBERT HOREL, Warden, Pelican Bay
     State Prison, California,

7              *Respondent*.

8    PEOPLE OF THE STATE OF CALIFORNIA,

9              *Real Party in Interest.*

10

11                  MEMORANDUM OF POINTS AND AUTHORITIES

12   **1. By excusing prospective jurors Ms. Youngblood, Ms. Jackson, and**
     **Ms. Watkins, the prosecutor improperly used his peremptories**
     **to exclude a cognizable group of African American women.**

13

14                            a. Introduction

15       The prosecution may not abuse its peremptory challenges by excusing jurors solely on the

basis of "group bias." *People v. Wheeler* (1978) 22 Cal.3d 258, *Batson v. Kentucky,* 476 U.S. 79,

16   106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), *Snyder v. Louisiana,* — U.S. —, 128 S. Ct. 1203, 170

17   L. Ed. 2d 175 (2008), *Miller-El v. Dretke*, 545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196

18   (2005). Doing so violates the equal protection clause of the Fourteenth Amendment to the

19   United States Constitution.

20       "*Batson* provides a three-step process for a trial court to use in adjudicating a
21       claim that a peremptory challenge was based on race:

22       First, a defendant must make a prima facie showing that a peremptory challenge
         has been exercised on the basis of race; second, if that showing has been made, the
23       prosecution must offer a race-neutral basis for striking the juror in question; and
         third, in light of the parties' submissions, the trial court must determine whether
24       the defendant has shown purposeful discrimination."

25   *Snyder v. Louisiana*, 128 S.Ct. at 1207, 170 L. Ed. 2d 175, quoting *Miller-El v. Dretke*, 545 U.S.

26   at 277, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (THOMAS, J., dissenting.)

27       "On appeal, a trial court's ruling on the issue of discriminatory intent must be
         sustained unless it is clearly erroneous. See *Hernandez v. New York*, 500 U.S. 352,
28       369, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991) (plurality opinion); id., at 372,

                                    m-1

111 S. Ct. 1859, 114 L. Ed. 2d 395 (O'Connor, J., joined [10] by SCALIA, J., concurring in judgment). . . ."

However, if the trial court commits clear error in overruling a defendant's *Batson* objection with respect to even one juror, a reviewing court need go no further in analyzing whether any other jurors were excluded for a discriminatory purpose. Reversal is required. "[T]he Constitution forbids striking even a single prospective juror for a discriminatory purpose." *Snyder v. Louisiana*, 128 S.Ct. at 1207-1208, 170 L. Ed. 2d 175, quoting *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994.)

Although petitioner here is an African-American, he is not a member of the group cited by defense counsel, "African-American females." However, a defendant may challenge a prosecutor's exercise of peremptory challenges against members of a cognizable group, even if the defendant is not a member of the particular cognizable group. In the latter instance, the defendant, having sufficient standing to do so, is asserting the Fourteenth Amendment equal protection rights of the excluded jurors, rather than his or her own. *Powers v. Ohio* (1991) 499 U.S. 400, 409-410, 111 S. Ct. 1364, 113 L. Ed. 2d 411, (exclusion of jurors of different race from defendant), *Campbell v. Louisiana* (1998) 523 U.S. 392, 118 S. Ct. 1419, 140 L. Ed. 2d 551 (extending *Powers* to allow white defendant to challenge selection of all-white grand jury.)

### b. The prosecutor did not offer permissible race neutral justifications for striking prospective jurors Ms. Youngblood and Ms. Jackson.

### i. Ms. Youngblood

"Implausible and fantastical justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett v. Elem*, 514 U.S. 765, 768, 131 L. Ed. 2d 834, 115 S. Ct. 1769 (1995.)

The prosecutor's justifications for striking Ms. Youngblood was that

a.  she had made no "eye contact" with the court during the court's initial comments to the jury, and

b.  she was a teacher and journalist, "liberal" professions (RT. 172.)

### (1) Lack of "eye contact."

It is unclear from the record whether the trial court agreed with the prosecutor's

1    comment that Ms. Youngblood exhibited a lack of "eye contact" with the prosecutor during his

2    questioning of her.  In *Snyder v. Louisiana*, although the Supreme Court acknowledged that a

3    juror's demeanor could be a legitimate non-racial reason for excluding a juror, the trial court has

4    a duty, under *Batson*, to specifically evaluate whether the juror's demeanor was such as to be the

5    basis for the strike:

6        "The trial court has a pivotal role in evaluating *Batson* claims. . . . Race-neutral
         reasons for peremptory challenges often invoke a juror's demeanor (e.g.,
7        nervousness, inattention), making the trial court's first-hand observations of even
         greater importance. In this situation, the trial court must evaluate . . . whether the
8        juror's demeanor can credibly be said to have exhibited the basis for the strike
         attributed to the juror by the prosecutor."

9

10   *Snyder v. Louisiana*, 128 S.Ct. at 1208, 170 L. Ed. 2d 175, citing *Hernandez v. New York*, 500

     U.S. 352 at 365, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991). The Supreme Court further held
11
     that, absent a specific record that the trial court evaluated and found credible the prosecution's
12
     assertion concerning the juror's demeanor, a reviewing court could not consider the prosecutor's
13
     excuse  concerning demeanor to be a legitimate race-neutral reason:
14
15       "Here, however, the record does not show that the trial judge actually made a
         determination concerning Mr. Brooks' demeanor. The trial judge was given two
         explanations for the strike. Rather than making a specific finding on the record
16       concerning Mr. Brooks' demeanor, the trial judge simply allowed the challenge
         without explanation. It is possible that the judge did not have any impression one
17       way or the other concerning Mr. Brooks' demeanor. Mr. Brooks was not
         challenged until the day after he was questioned, and by that time dozens of other
18       jurors had been questioned. Thus, the trial judge may not have recalled Mr.
         Brooks' demeanor. Or, the trial judge may have found it unnecessary to consider
19       Mr. Brooks' demeanor, instead basing his ruling completely on the second
         proffered justification for the strike. For these reasons, we cannot presume that
20       the trial judge credited the prosecutor's assertion that Mr. Brooks was nervous."

21   *Snyder v. Louisiana*, 128 S.Ct. at 1209, 170 L. Ed. 2d 175. Here, as in *Snyder*, the trial court

22   did not make any determination concerning Ms. Youngblood's demeanor; he simply accepted

23   the prosecutor's two explanations as race-neutral. By accepting the prosecution's comment about

24   demeanor as a race neutral reason in the absence of a record that the trial judge had actually

25   credited this explanation, the Court of Appeal unreasonably applied U.S. Supreme Court law

26   as set forth in *Hernandez v. New York*, 500 U.S. at 365.  The Court of Appeal's finding that the

27   record did not contradict the lack of "eye contact" turned *Hernandez* on its head by assuming

28   that the trial court credited the prosecution's credibility excuse unless the record demonstrated

otherwise, and was thus an unreasonable application of *Hernandez*.

### (2) Occupation

For the last 6 years, Ms. Youngblood had worked as an English teacher. The prosecutor claimed that he exercised his peremptory challenge because teachers are "liberal." 30 years before, Ms. Youngblood had worked for a radio station covering "community stories." The prosecution claimed that Ms. Youngblood had been a "journalist" and that journalists are "liberal." The prosecutor made no inquiry into Ms. Youngblood's specific activities either as an English teacher or during her work at the radio station, and did not ask her what she had done in the intervening 25 years.

The Supreme Court in *Snyder v. Louisiana* held that in evaluating a prosecutor's race neutral excuse, it would tend to indicate that the excuse was not race neutral if the asserted characteristics were shared by seated jurors.

> ". . . it is apparent that the trial occurred relatively early in the fall semester. With many weeks remaining in the term, Mr. Brooks would have needed to make up no more than an hour or two per week in order to compensate for the time that he would have lost due to jury service. When all of these considerations are taken into account, the prosecutor's second proffered justification for striking Mr. Brooks is suspicious.
>
> The implausibility of this explanation is reinforced by the prosecutor's acceptance of white jurors who disclosed conflicting obligations that appear to have been at least as serious as Mr. Brooks'. . . .
>
> A comparison between Mr. Brooks and Roland Laws, a white juror, is particularly striking. During the initial stage of voir dire, Mr. Laws approached the court and offered strong reasons why serving on the sequestered jury would cause him hardship. Mr. Laws stated that he was "a self-employed general contractor," with "two houses that are nearing completion, one [with the occupants] . . . moving in this weekend." Id., at 129. He explained that, if he served on the jury, "the people won't [be able to] move in." Id., at 130. Mr. Laws also had demanding family obligations:
>
> > "[M]y wife just had a hysterectomy, so I'm running the kids back and forth to school, and we're not originally from here, so I have no family in the area, so between the two things, it's kind of bad timing for me." Ibid.
>
> Although these obligations seem substantially more pressing than Mr. Brooks', the prosecution questioned Mr. Laws and attempted to elicit assurances that he would be able to serve despite his work and family obligations. See ibid. (prosecutor asking Mr. Laws "[i]f you got stuck on jury duty anyway . . . would you try to make other arrangements as best you could?"). And the prosecution declined the opportunity to use a peremptory strike on Mr. Laws. Id., at 549. If the prosecution had been sincerely concerned that Mr. Brooks would favor a lesser

1    verdict than first-degree murder in order to shorten the trial, it is hard to see why
      the prosecution would not have had at least as much concern regarding Mr. Laws.
2
      The situation regarding another white juror, John Donnes, although less fully
3    developed, is also significant. At the end of the first day of voir dire, Mr. Donnes
      approached the court and raised the possibility that he would have an important
4    work commitment later that week. Id., at 349. Because Mr. Donnes stated that he
      would know the next morning whether he would actually have a problem, the
5    court suggested that Mr. Donnes raise the matter again at that time. Ibid. The
      next day, Mr. Donnes again expressed concern about serving, stating that, in
6    order to serve, 'I'd have to cancel too many things,' including an urgent
      appointment at which his presence was essential. Id., at 467-468. Despite Mr.
7    Donnes' concern, the prosecution did not strike him. Id., at 490."

8    *Snyder v. Louisiana*, 128 S.Ct. at 1211-1212, 170 L. Ed. 2d 175.

9        The record shows that one of the seated jurors, a Hispanic man, had a daughter who was

10   a teacher. (Supplemental Clerk's Transcript ("S.C.T.") 147.) Another juror, a white man, worked

11   as a D.J. for Radio AOL. (S.C.T. 242.) Another juror, a Hispanic woman, taught women's self

12   defense classes. (S.C.T. 300.) Ms. Youngblood's occupations as "teacher" and "radio journalist"

13   were shared by two jurors, and a third journalist had an immediate family member who was a

14   teacher.

15       Furthermore, the proponent of a strike "must give a 'clear and reasonably specific'

16   explanation of his 'legitimate reasons' for exercising the challenges." *Batson v. Kentucky*, 476

17   U.S. at 98, n. 20, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258,

18   101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The prosecutor did not elicit any information from

19   Ms. Youngblood about her teaching job or her work at the radio station. The court can't tell

20   if she taught English literature or taught English to students for whom it was a second language,

21   nor can it tell whether her radio work regarding "community stories" involved interviewing

22   members of the Black Panther Party on the one hand  or simply reading bulletins advertising

23   bake sales and flower shows on the other. It is like disqualifying a "painter" because "artists are

24   liberals" without determining whether the juror paints pictures, cars, or houses.

25       Ms. Youngblood said that she had lived for 10 years in the Ivory Coast, an African

26   country. That, plus her first name of Furaha, suggests that Ms. Youngblood was not only an

27   African-American but African in origin, and that the prosecutor's decision to excuse her was

28   motivated by her African nationality and not just her ethnic status as a black person. This, of

course, would not be a race neutral basis for striking a juror.

### ii. Ms. Jackson

### (1) Dismissal of prior case

The prosecutor's reasons for striking Ms. Jackson was that she had sat on a murder case that was dismissed before deliberations, and he thought that she would be skeptical as a result. He speculated that the case might have been dismissed under Penal Code section 1118 (a judgment of acquittal) because of insufficient evidence. The prosecutor had not questioned Ms. Jackson about the dismissal or the effect it might have on her, and had no information about it. Defense counsel repeatedly questioned Ms. Jackson about this, however, and Ms. Jackson repeatedly said that she remembered nothing about the facts of the trial. From what Ms. Jackson said, the dismissal had nothing to do with the jury – they were just told about the dismissal when they went in to deliberate. The defendant might have decided to accept a deal and plead guilty at the last minute, and the jury simply told that they were dismissed. Since Ms. Jackson did not remember anything about the case, the dismissal was irrelevant. Ms. Jackson's simply being on a criminal jury that never got to deliberate is far less relevant than having been in a jury that actually deliberated.

"The State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination." *Miller-El v. Dretke*, 545 U.S. 231; 125 S. Ct. 2317 at 2329; 162 L. Ed. 2d 196 (2005). In addition, the prosecutor did not give a clear and reasonably specific explanation of his actions as required by *Batson* and *Burdine*.

### (2) Auto accident involving police officer

The prosecutor's alternate basis was that Ms. Jackson had been involved in an auto accident with a police officer whom she thought had lied to her. But Ms. Jackson said no such thing. The voir dire consisted of the following:

Prosecutor: "And was the patrol car involved in a chase, anything like that?"

Ms. Jackson: "Well, he said he was in a chase but going to the scene of something that was happening. Not directly in a chase. He wasn't chasing a car. He was going to someplace where they were having a chase. That was his explanation."

1

2    Prosecutor: "And I take it by your response that you're not quite satisfied with his explanation?"

3    Ms. Jackson: "No, I was not."

4    Prosecutor: "Were there any -- I take it you believe the accident was his fault?"

5    Ms. Jackson: "Yes, I do."

6    (RT. 96-97.)

7    Ms. Jackson was not asked, nor did she say, that she thought the officer was "lying" about

8    being on his way to a car chase. She simply said she wasn't satisfied with his explanation – she

9    didn't think being on the way to a car chase was an adequate excuse for hitting her car, that the

10   officer still should have driven safely, and that the accident was his fault.

11   The prosecutor's misstatement of the record is evidence of a discriminatory intent.

12   *McClain v. Prunty*, 217 F.3d 1209, 1220-1221 (9th Cir. 2000), citing *Purkett v. Elem*, 514 U.S.

13   at 768 (rejecting prosecutor's attempt to attribute to challenged juror "beliefs that she did not

14   hold" about "mistrusting the system," where juror never made such a statement and indicated

15   to the court that she did believe her son had been treated fairly by "the system"), *Collins v. Rice*,

16   365 F.3d 667, 680-681 (9th Cir. 2004) (prosecutor's challenge to juror as being tolerant of drug

17   use was not sustained when record showed only that juror had answered "yes" to the court's

18   question regarding whether she believed that possession of cocaine should be against the law and

19   that neither she nor her family members or any of her close friends had ever had a problem with

20   drugs or alcohol), *Johnson v. Vasquez*, 3 F.3d 1327, 1330-31 (9th Cir. 1993) (prosecutor excused

21   juror, claiming she had worked for a defense attorney, was uneducated, was evasive, and that

22   her age was a problem. Record showed that juror had worked for a divorce lawyer, spoke

23   excellent English, worked as the head of the Sales Service Department for a major manufacturer,

24   was not evasive, and there was no record of the juror's age or whether the prosecutor had

25   objected because she was too young or too old.)

26   In addition, Ms. Jackson said that she had had "pleasant experiences" with other

27   policemen. (RT. 97.) The facts of her experience with the one policeman have nothing in

28   common with the case – her car had simply been hit by a patrol car that was presumably

m-7

1    speeding.  The prosecutor did not inquire into how long ago the accident had taken place.  Ms.

2    Jackson also expressed concern that the system is unfair to victims of violent crimes, a concern

3    that would appear to be pro-prosecution.  This concern suggests that the prosecutor's proffered

4    reasons for striking Ms. Jackson were not race neutral.

### iii.  The trial court did not find that the prosecutor sincerely believed the justifications.

"A *Batson* challenge does not call for a mere exercise in thinking up any rational basis."

*Kesser v. Cambra*, 465 F.3d 351, 359 (9th Cir. 2006), quoting *Miller-El v. Dretke*, 125 S. Ct. at

2332.

> "After the prosecution puts forward a race-neutral reason, the court is required
> to evaluate 'the persuasiveness of the justification.' To accept a prosecutor's stated
> nonracial reasons, the court need not agree with them. The question is not
> whether the stated reason represents a sound strategic judgment, but 'whether
> counsel's race-neutral explanation for a peremptory challenge should be believed.'
> *Hernandez v. New York*, 500 U.S. 352, 365, 111 S. Ct. 1859, 114 L. Ed. 2d 395
> (1991) (plurality opinion). 'It is true that peremptories are often the subjects of
> instinct,' and that 'it can sometimes be hard to say what the reason is.' *Miller-El*,
> 125 S. Ct. at 2332. 'But when illegitimate grounds like race are in issue, a
> prosecutor simply has got to state his reasons as best he can and stand or fall on
> the plausibility of the reason she gives.' Id."

*Kesser v. Cambra, id.*

The Court of Appeal, citing *People v. Guerra* (2006) 37 Cal.4th 1067, 1101  held that

"all that matters is that the prosecutor's reason is sincere and legitimate in the sense of being

nondiscriminatory.  It need not 'make sense' in any other respect." The Court of Appeal,

however, was bound by the law of the United States Supreme Court regarding the trial court's

duty:

> "The trial court has a pivotal role in evaluating Batson claims. Step three of the
> *Batson* inquiry involves an evaluation of the prosecutor's credibility, see 476 U.S.,
> at 98, n. 21, 106 S. Ct. 1712, 90 L. Ed. 2d 69, and 'the best evidence [of
> discriminatory intent] often will be the demeanor of the attorney who exercises
> the challenge,' *Hernandez*, 500 U.S., at 365, 111 S. Ct. 1859, 114 L. Ed. 2d 395
> (plurality opinion). In addition, race-neutral reasons for peremptory challenges
> often invoke a juror's demeanor (e.g., nervousness, inattention), making the trial
> court's first-hand observations of even greater importance. In this situation, the
> trial court must evaluate not only whether the prosecutor's demeanor belies a
> discriminatory intent, but also whether the juror's demeanor can credibly be said
> to have exhibited the basis for the strike attributed to the juror by the prosecutor."

*Snyder v. Louisiana*, 128 S.Ct. at 1208, 170 L. Ed. 2d 175.

1    The record does not show that the trial court made any evaluation of the prosecutor's

2    credibitility or sincerity concerning the decision to exclude Ms. Youngblood and Ms. Jackson.[1]

3    While the trial court did appear to make the required analysis of the prosecutor's sincerity as to

4    the third part African-American female juror, Ms. Watkins, as to Ms. Youngblood and Ms.

5    Jackson, the trial judge merely found that the justifications offered by the prosecutor were "race

6    neutral." In so doing, the judge did nothing more than find that the prosecutor had successfully

7    thought up a rational basis for dismissing the two jurors, which was insufficient. Under *Batson,*

8    the trial court had the duty to determine whether the prosecutor's proffered reasons were

9    credible, and did not do so – he merely found that they were facially reasonable. Significantly,

10   despite the "baggage" that the trial court said that the third African-American juror, Ms.

11   Watkins, came with, the court was troubled by the prosecutor's exclusion her, yet another black

12   female juror, and believed that defense had made a prima facie case of discriminatory intent.

13       The following objective facts suggest that the prosecutor's proffered justifications for

14   excluding Ms. Youngblood and Ms. Jackson were not sincere, and that the prosecutor excluded

15   both because of their race.

16       a. The prosecutor's complaint that the defense had excluded five straight white
         men, in response to the defense objection to his exclusion of Ms. Youngblood,
17       showing that the prosecutor was immediately focusing on race and gender at the
         time he excluded Ms. Youngblood.

18
         b An expressed concern about Ms. Youngblood's radio job thirty years ago, when
19       the prosecutor conducted no voir dire into the details of the job.

20       c. An expressed concern about Ms. Youngblood's teaching job, when the
         prosecutor conducted no voir dire into the details of the job.
21
         d. No voir dire about Ms. Youngblood's occupation in the twenty-five years
22       between her radio job and teaching job (suggesting that the prosecutor was not
         particularly concerned about Ms. Youngblood's occupation after all.)
23
         e. An expressed concern that the prior trial in which Ms. Jackson was a juror
24       might have been dismissed for an evidence problem, when Ms. Jackson said she
         remembered nothing about the trial and when the prosecutor did not voir dire her
25       about the trial.

26

---

27   [1] The trial judge, did not, for example, ask the prosecutor why he found Ms. Youngblood's job as a
     journalist 30 years ago of concern, or why, if Ms. Jackson did not remember the facts of the trial in
28   which she previously was a juror, why it was of concern to the prosecutor that the trial might have been
     dismissed because of some problem with the evidence.

f. Misstating the record that Ms. Jackson had accused the officer who hit her car of lying, when Ms. Jackson had simply said that she didn't think the officer's excuse that he was on his way to a chase justified his hitting her car.

### c. This court must issue a writ if *any* juror was excluded as the result of discrimination, without considering "prejudice"

If any of the prosecutor's challenges are motivated by "group bias" all jurors must be excused and a new panel summoned. It is reversible error for the court to permit any peremptory challenge that is racially or otherwise impermissibly motivated. *United States v. Annigoni* (1995) 68 F.3d 279(9ᵗʰ Cir. 1995.) Governmental use of peremptories to effect purposeful discrimination is a structural defect and petitioner need not show prejudice. *United States v. Annigoni*, 68 F.3d at 285.

Since either or both of the prospective jurors Ms. Youngblood or Ms. Jackson was excluded on a discriminatory basis, and since the trial court failed to perform its duties under *Batson v. Kentucky* and cases cited above to evaluate each stated reason as applied to each challenged juror and the prosecutor's credibility, this court must issue a writ of habeas corpus.

### 2. The trial court failed to remove a biased juror, denying petitioner his Sixth Amendment right to an impartial jury.

### a. The juror admitted that the personal relationship between his wife and the prosecutor's wife might affect his decision in the case.

The Sixth Amendment guarantees criminal defendants "a jury capable and willing to decide the case solely on the evidence before it." A defendant is denied the right to an impartial jury even if only one juror is biased or prejudiced. *Fields v. Woodford*, 309 F.3d 1095, 1103 (9ᵗʰ Cir. 2001), citing *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 78 L. Ed. 2d 663, 104 S. Ct. 845 (1984), *Smith v. Phillips*, 455 U.S. 209, 217, 71 L. Ed. 2d 78, 102 S. Ct. 940 (1982), and *Tinsley v. Borg*, 895 F.2d 520, 523-24 (9ᵗʰ Cir. 1990). "'The presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice." *Fields v. Woodford, id*, quoting *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9ᵗʰ Cir. 2000).

Bias can either be actual or implied. "Actual bias" is defined as "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Fields*

1    *v. Woodford, id,* citing *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S. Ct. 844, 83 L. Ed. 2d 841

2    (1985) and quoting *United States v. Torres,* 128 F.3d 38, 43 (2nd Cir. 1997). "Implied bias" is

3    bias arising "from the potential for substantial emotional involvement, adversely affecting

4    impartiality, inherent in certain relationships." *Fields v. Woodford,* 309 F.3d at 1104, citing

5    *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. at 556-57 and quoting *Tinsley v.*

6    *Borg,* 895 F.2d at 527.

7         Juror #9 admitted that the relationship between his wife and the prosecutor's wife, who

8    were members of the same mothering group, caused him to be sympathetic towards the

9    prosecutor, stating "I'm not sure that I can completely discount the possibility that an increase

10   of sympathy for the district attorney might be added to just my overall feelings. I don't think it

11   would affect how I've already considered the case. But I - you know, I can't completely discount

12   that." (RT. 1784.) In doing so, he admitted actual bias by saying that he could "not act with

13   entire impartiality." *Fields v. Woodford, Wainwright v. Witt, United States v. Torres.* Indeed,

14   Juror 9 was concerned enough to state that he would prefer to be removed if his remaining on

15   the jury could affect the perception of the jury's decision. (RT. 1781.) Juror #9's comments also

16   showed implied bias, because of his strong emotional ties to his wife and baby. [2]

17        The trial court erred by failing to remove him. It used the wrong standard, finding that

18   Juror #9 was "fully capable" of being impartial, rather than finding that Juror #9 would be

19   impartial. (RT. 1788.) Under established law, the defense was not required to prove that Juror

20   #9 would not be impartial. The defense simply had to show an "inference" or probability that

21   Juror #9 would not be impartial, and it did. Juror #9 himself admitted that he might not be

22   impartial. The trial court's finding that Juror #9 was "capable" of being impartial did not refute

23   this inference that the juror would not be impartial. Moreover, by acknowledging that Juror #9

24   had believed that the relationship between the two wives gave rise to an "appearance" that the

25   juror would not be impartial, the court acknowledged that there was an inference arising from

26

27   [2] In addition, the jury questionnaire reveals that Juror #9's "sister-in-law's spouse" is an officer with the

28   Concord police department (S.C.T. 243) and that his mother had been murdered (he had discovered the
     mother's body) (S.C.T. 244.)

1  this relationship of both actual and implied bias.

2  Respondent has previously argued that in a small community, it would be impossible to

3  eliminate the kind of relationships that occurred between the prosecutor's and juror's wives.

4  Alameda County is not such a community – it has a population of almost one and one half

5  million people.  Indeed, if a trial was set in an underpopulated rural community where everyone

6  knew everyone else, it might well be impossible to find an unbiased jury, and there are

7  provisions for moving the trial elsewhere.  Moreover, it was not simply that the juror's wife was

8  in her baby caring group with some member of the Alameda County District Attorney's office.

9  Juror #9's wife was in the group with the wife of the very prosecutor trying the case!  An

10  alternate was available; there would have been no mistrial if Juror #9 had been removed.  Under

11  the circumstances, it was inexcusable for the trial court not to remove Juror #9, given the fact

12  that the juror's wife was a personal friend of the prosecutor's wife and Juror #9 admitted that

13  this fact might affect his ability to be impartial. [3]

### 3. Conclusion

15  For these reasons, this court should grant a writ of habeas corpus.

16  Dated:  Oakland, California, Friday, May 16, 2008.

*Robert J. Beles*

Robert J. Beles
Paul McCarthy
Attorneys for *Defendant-Appellant* PHILLIP
GIPSON

---

[3] In *Fields v. Woodford*, the Ninth Circuit ordered an evidentiary hearing on the issue of juror bias.
While Juror #9 was briefly questioned in the superior court, no evidentiary hearing was held.  If there
is some question as to whether the juror was biased, this court has the power to hold an evidentiary
hearing and should do so.